| | |
|---|---|
| RONALD and SONYA SCHMUCKER, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 3:14-CV-1593 JD ) |
| JOHNSON CONTROLS, INC., et al., | ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This is a citizen suit under the Resource Conservation and Recovery Act relative to a former manufacturing facility in Goshen, Indiana, that the Plaintiffs allege contaminated the ground with hazardous wastes and caused dangerous levels of Trichloroethylene to be present in their neighborhood. The Plaintiffs, five individuals who own or reside in homes near the site, sued Johnson Controls, Inc., which owned and operated the facility from 1937 through 2007, and Tocon Holdings, LLC, which currently owns the property. They asserted claims against both defendants under each applicable citizen-suit prong of RCRA, alleging that the defendants are in violation of various RCRA requirements (Count I) and that they have caused or contributed to an imminent and substantial endangerment to health or the environment (Count II).

Tocon Holdings answered the complaint, but Johnson Controls has moved to dismiss both counts. Johnson Controls argues as to Count I that the complaint fails to state a claim, and argues as to both counts that the Plaintiffs failed to provide notice far enough in advance of filing suit, which is a statutory prerequisite to certain claims. The motion has been exhaustively briefed. For the reasons that follow, the Court grants the motion to dismiss as to Count I and denies it as to Count II, and grants Plaintiffs leave to amend.

# I. FACTUAL BACKGROUND

Johnson Controls began operating a manufacturing facility in Goshen, Indiana in 1937, manufacturing parts for thermostats and building control systems. The facility's operations involved the use of Trichloroethene (TCE) and other hazardous chemicals. From 1937 through 1965, Johnson Controls discharged the waste products of these chemicals into an adjacent creek at a rate it estimated at 6 million gallons per year. The State of Indiana then ordered Johnson Controls to cease this dumping, at which point Johnson Controls began storing the wastes on-site in drums and other containers, pending off-site disposal. However, during the course of its operations, Johnson Controls also occasionally spilled or dumped this waste onto the ground.

When the regulations under the Resource Conservation and Recovery Act took effect in 1980, Johnson Controls qualified as a facility for the treatment, storage, or disposal of hazardous waste. It thus filed its "Part A" application on October 29, 1980, and on June 14, 1982, the Environmental Protection Agency notified Johnson Controls that it had been granted "interim status," the first step towards receiving a permit to store hazardous waste. At that point, Johnson Controls was required to either submit its "Part B" application to receive a formal permit, or to submit a closure plan. Johnson Controls opted to take the latter path, and beginning in 1989, it filed a series of closure plans for its four on-site hazardous waste management units. The Indiana Department of Environmental Management finally approved the closure plan on March 20, 1991. Johnson Controls then conducted soil sampling as recommended by IDEM, which detected contamination in the soil under the facility as high as 260,000 parts per billion (ppb). To determine the extent of the contamination, the facility commissioned a study that found a plume of contamination consisting primarily of TCE that extended 5,400 feet offsite to the west, 800 feet wide, and 170 feet below grade. The report stated that "it is believed that the plume is an

accumulation of releases which occurred over a 55-year period of facility operations." [DE 4 ¶ 68].

Much of the plume was below a residential area, and it included two private drinking water wells. The tap water in the homes using those wells contained TCE in concentrations of 12,200 and 1,300 ppb. By comparison, the maximum contaminant level for TCE established by the EPA was 5 ppb. According to Plaintiffs, though, Johnson Controls acted slowly to contain or remediate this contamination. Not until 1997 did it submit a remediation plan to IDEM and install extraction wells in an attempt to remediate the TCE contamination to acceptable levels. Plaintiffs further allege that Johnson Controls' remediation efforts since then have been minimal and ineffectual, allowing dangerous levels of TCE to persist in their neighborhood through to the present. As of January 2013, groundwater underlying Goshen High School, which sits at the far end of the contamination plume, contained TCE contamination of 192 ppb. Another groundwater monitoring well in the heart of the neighborhood recorded even greater TCE contamination of 1,150 ppb, and other monitoring wells in the area likewise show substantial TCE contamination.

In addition, in 2011, Johnson Controls began investigating vapor intrusion, through which vapors from the TCE in the ground rise through the soil and contaminate the air inside surface structures. A July 12, 2012 report on vapor intrusion in the neighborhood inside the plume stated that "TCE was detected at concentrations exceeding the Residential Screening Level in 36 of the 39 sub-slab vapor samples collected from residential properties." [DE 4 ¶ 106]. The vapor levels at a number of these homes exceeded the recommended levels by several hundred times. In addition, the report revealed that 15 of the 20 residential homes tested had unacceptable levels of TCE vapors within their indoor air. Johnson Controls had vapor mitigation systems installed in those homes, but two of the homes had unacceptable levels of

vapor intrusion even after installation of those systems, and Plaintiffs allege that Johnson

Controls has not been properly monitoring or maintaining the systems. Plaintiffs further allege

that many of the homes within the plume have not been tested at all, even though they are likely

contaminated.

Dissatisfied with the pace and extent of Johnson Controls' remediation efforts, Plaintiffs

served notice of their intent to sue on May 28, 2014, and then commenced this action on May 30,

2014, asserting two causes of action under RCRA. Johnson Controls has now moved to dismiss

both counts.

## II.  STANDARD OF REVIEW

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim

upon which relief may be granted.  When considering a Rule 12(b)(6) motion to dismiss, the

Court must decide whether the complaint satisfies the "notice-pleading" standard. *Indep. Trust

Corp. v. Stewart Info. Servs. Corp*., 665 F.3d 930, 934 (7th Cir. 2012).  The notice-pleading

standard requires that a complaint provide a "short and plain statement of the claim showing that

the pleader is entitled to relief," sufficient to provide "fair notice" of the claim and its basis.  *Id*.

(citing Fed. R. Civ. P. 8(a)(2)); *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (internal

citations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In

determining the sufficiency of a claim, the Court construes the complaint in the light most

favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all inferences

in the nonmoving party's favor. *Reynolds v. CB Sports Bar, Inc*., 623 F.3d 1143, 1146 (7th Cir.

2010) (internal citations omitted).

The Supreme Court has adopted a two-pronged approach when considering a Rule

12(b)(6) motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  First, pleadings

consisting of no more than mere conclusions are not entitled to the assumption of truth.  *Id*.  This

includes legal conclusions couched as factual allegations, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). Second, if well-pleaded factual allegations are present in the complaint, courts should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint "must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Maddox*, 655 F.3d at 718 (internal citations omitted). A plaintiff's claim, however, need only be plausible, not probable. *Indep. Trust Corp.*, 665 F.3d at 934 (quoting *Twombly*, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted). Factual allegations, however, "that are merely consistent with a defendant's liability . . . stop[] short of the line between possibility and plausibility of entitlement to relief." *Id*. at 678.

Finally, because a motion to dismiss tests the legal adequacy of a complaint, not its factual support, a court is limited in the materials it can rely on in resolving such a motion. "A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see* Fed. R. Civ. P. 12(d). The Seventh Circuit has also recognized a narrow exception to that rule for materials submitted by the non-movant, but only for the limited purpose of

illustrating that the allegations in the complaint are plausible. *Geinosky*, 675 F.3d at 745 n.1.

Here, both parties have submitted materials outside of the pleadings, but they both argue that the

materials are public records subject to judicial notice such that the Court can consider them

without converting the motion to a motion for summary judgment. The Court agrees, and also

notes that none of those materials are essential to the resolution of this motion, so it does not

need to convert the motion to one for summary judgment.

### III. DISCUSSION

The Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.*, "enacted a

broad range of policies and procedures to control disposal of solid and hazardous waste in the

United States to protect public health and the environment." *Adkins v. VIM Recycling, Inc.*, 644

F.3d 483, 486 (7th Cir. 2011). Subchapter III of RCRA, which pertains specifically to hazardous

wastes, "empowers [the Environmental Protection Agency] to regulate hazardous wastes from

cradle to grave . . . ." *City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 331–32 (1994). RCRA

is implemented through a complex regulatory scheme that includes roles for the federal

government, for state governments, and for citizens acting as "private attorneys general." *Adkins*,

644 F.3d at 486; *AM Int'l, Inc. v. Datacard Corp., DBS*, 106 F.3d 1342, 1349 (7th Cir. 1997).

The EPA has the default responsibility for implementing and enforcing RCRA, but it may also

authorize states to assume those roles. 42 U.S.C. § 6926(b). In that event, so far as is relevant

here, the state regulations operate in lieu of the federal regulations, and the two governments

share enforcement authority. *Id.*

In addition, RCRA contains two causes of action through which private individuals can

assume enforcement roles. First, subsection (a)(1)(A) of § 6972 permits an individual to sue "any

person . . . who is alleged to be in violation of any permit, standard, regulation, condition,

requirement, prohibition, or order which has become effective pursuant to [RCRA.]" 42 U.S.C.

§ 6972(a)(1)(A). Second, subsection (a)(1)(B) permits an individual to sue "any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). While an (a)(1)(A) claim requires a violation of some obligation under RCRA, without regard to its effects or severity, an (a)(1)(B) claim requires the presence of an imminent and substantial endangerment to health or the environment, but need not be predicated on any violation. In order to bring either of these claims, an individual must first provide notice to the defendant and to the state and federal agencies, and must then wait 60 or 90 days before filing suit. 42 U.S.C. § 6972(b). A plaintiff need not delay after providing notice, however, "in the case of an action under this section respecting a violation of subchapter III of this chapter." *Id.*

Plaintiffs press both claims here. Count II, which is based on the alleged presence of dangerous levels of TCE contamination in Plaintiffs' neighborhood, fits comfortably within the framework of an (a)(1)(B) claim for an imminent and substantial endangerment to health or the environment, and Johnson Controls does not challenge its sufficiency. Count I is more problematic, however, as Plaintiffs base this claim primarily on the presence of that same contamination, but struggle to identify any "permit, standard, regulation, condition, requirement, prohibition, or order" that Johnson Controls is "in violation of," as is required for an (a)(1)(A) claim. Johnson Controls thus moves to dismiss Count I for failure to state a claim. In addition, because Plaintiffs filed this suit only two days after serving notice of the claims, Johnson Controls also argues that both counts should be dismissed for failure to observe the statutory notice and delay periods.

Before moving to the merits of the motion to dismiss, Johnson Controls has filed a motion to strike Plaintiffs' sur-reply or for leave to file a sur-sur-reply. [DE 55]. After briefing on the motion to dismiss was complete, Plaintiffs moved for leave to make a belated request for oral argument so that they could respond to an exhibit that Johnson Controls attached to its reply brief. The Court denied that motion and instead granted leave for Plaintiffs to file a sur-reply, which they did. In response to the sur-reply, Johnson Controls filed this motion, arguing that the arguments in the sur-reply exceeded the scope of the leave granted by the Court. Johnson Controls asks the Court to strike the sur-reply, or in the alternative, for leave to file a sur-sur-reply, which it attached to the motion. Plaintiffs did not respond to the motion. In the interests of allowing the parties to be fully heard relative to the motion to dismiss, the Court denies the motion to strike, but grants Johnson Controls permission to file a sur-sur-reply, and has considered that filing in resolving the motion to dismiss.

## A.     Count I: Subsection (a)(1)(A) Claim

In Count I, Plaintiffs allege that Johnson Controls has violated various obligations under RCRA. Johnson Controls seeks dismissal of this count on two grounds: first, for failure to comply with the statutory notice and delay provision; and second, for failure to adequately plead a violation of RCRA, as is required for an (a)(1)(A) claim. The Court addresses each argument in turn.

### 1.     Plaintiffs' Subsection (a)(1)(A) Claim is Not Premature

Johnson Controls first argues that Plaintiffs failed to comply with the 60-day waiting period after serving notice of their claim before filing suit. Under § 6972(b)(1)(A), "No action may be commenced under subsection (a)(1)(A) of this section . . . prior to 60 days after the plaintiff has given notice of the violation." 42 U.S.C. § 6972(b)(1)(A). The lone exception to this waiting period is that an "action may be brought immediately after such notification in the case

of an action under this section respecting a violation of subchapter III of this chapter [Chapter 82 of Title 42 of the United States Code, where RCRA is codified]." *Id.* Under the Supreme Court's decision in *Hallstrom v. Tillamook County*, 493 U.S. 20, 33 (1989), a failure to meet these requirements requires dismissal.[1]

Here, Plaintiff served the appropriate parties with notice of their claims on May 28, 2014, and then commenced this action by filing suit on May 30, 2014, only two days later. [DE 4-1]. Thus, for this action to be timely, the exception to the waiting period must apply, meaning this must be an action "respecting a violation of subchapter III" of RCRA. § 6972(b)(1)(A). Subchapter III of RCRA addresses hazardous wastes, which are at issue here, but there is a complication in that Indiana has been authorized by the EPA to administer and enforce its own hazardous waste program. 61 Fed. Reg. 43018. Under RCRA, when a state has been authorized by the EPA, the state's program operates "in lieu of the Federal program under this subchapter [Subchapter III]." 42 U.S.C. § 6926(b). Therefore, Johnson Controls argues that Plaintiffs' claim is not respecting a violation of subchapter III of RCRA, but is merely respecting violations of state regulations, so it does not qualify for the exception to the delay period.

In resolving this objection, it is helpful to first clarify what is and what is not in dispute. First, Johnson Controls does not contend that an (a)(1)(A) claim is not available at all in authorized states, even though in that event the claim must be based on state regulations, which

---

[1] The Supreme Court expressly declined to address whether the notice and delay requirement affects a court's subject matter jurisdiction or is merely a condition precedent to filing suit that can be enforced by a defendant. *Hallstrom*, 493 U.S. at 31. More recently, the Seventh Circuit has held that this requirement is not jurisdictional: "In *Hallstrom*, . . . the Supreme Court declined to decide whether RCRA's notice and 60-day delay requirements for citizen suits are jurisdictional. Under the analysis the Supreme Court has applied more recently to similar questions, the clear answer is that they are not." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 492 n.3 (7th Cir. 2011). The difference is not consequential here, however, since the remedy in either case is dismissal without prejudice.

apply in lieu of the federal ones. *AM Int'l, Inc. v. Datacard Corp., DBS*, 106 F.3d 1342, 1350 (7th Cir. 1997). An (a)(1)(A) claim must be based on an obligation "which has become effective pursuant to" RCRA. 42 U.S.C. § 6972(a)(1)(A). As the Seventh Circuit has at least implicitly acknowledged, and as the EPA persuasively reasons, the EPA's authorization of a state program (the authority for which is also located in RCRA, § 6926) makes that state program effective pursuant to RCRA, so violations of the state program are actionable through an (a)(1)(A) claim. *Datacard*, 106 F.3d at 1350–51 (holding that the plaintiff's (a)(1)(A) claim that alleged violations of federal regulations in an authorized state failed simply because the plaintiffs "based the claim on the wrong set of regulations"); 63 Fed. Reg. 57026, 57033 (Oct. 23, 1998) ("EPA's longstanding view is that citizens can enforce the elements of an authorized state hazardous waste program under RCRA [Subsection III] by bringing an action under RCRA section [§ 6972]. . . . EPA authorization of the state program gives that state program legal effect under federal law—*i.e.*, the state program 'becomes effective pursuant to RCRA.' The state program thus is citizen enforceable under the plain language of RCRA section [§ 6972]."). Johnson Controls thus concedes that an (a)(1)(A) claim may be available, but argues more narrowly that (a)(1)(A) claims that are based on state regulations (as they must be in authorized states) are not "respecting a violation of Subchapter III" of RCRA, so they do not qualify for the exception of the notice and delay requirement.

Second, Johnson Controls does not also argue that federal regulations promulgated under the authority granted by Subchapter III cannot form the basis for a claim respecting a violation of Subchapter III. In other words, Johnson Controls does not argue that a claim is only respecting a violation of Subchapter III if the obligation that was violated is found directly in the statutory text of Subchapter III, as opposed to in the regulations that Subchapter III directs the EPA to

establish. Thus, the distinction that Johnson Controls draws is only between federal regulations, which can form the basis for Subchapter III claims, and state regulations, which Johnson Controls contends cannot.

However, the Court disagrees that the distinction between federal and state regulations is meaningful as to whether a claim under (a)(1)(A) is respecting a violation of Subchapter III of RCRA. Subchapter III is predominantly an enabling statute that directs the establishment of a body of regulations to govern hazardous wastes, *see generally Covington v. Jefferson Cnty.*, 358 F.3d 626, 648 (9th Cir. 2004) (distinguishing between the substantive and enabling provisions of § 6924), and it provides two frameworks under which that body of regulations can be created and take effect. Much of Subchapter III is devoted to directing the EPA to promulgate regulations to create a federal permitting and enforcement scheme for hazardous wastes. However, Subchapter III also permits states to develop their own hazardous waste programs, and specifies a process by which the EPA can grant the state authorization to carry out its program, which then operates "in lieu of" the federal program. § 6926(b). Under either framework, the result is a body of regulations that is authorized and given effect through Subchapter III. Thus, it is not apparent why it should matter for these purposes whether that body of regulations was the product of the EPA's rule-making process pursuant to Subchapter III's directives to promulgate regulations, or the product of the EPA's authorization process that is also set forth in Subchapter III.

Other provisions within Subchapter III confirm that the statute views the two programs as equivalent in this context. First, § 6926(d) states, "Any action taken by a State under a hazardous waste program authorized under this section shall have the same force and effect as action taken by the Administrator under this subchapter," 42 U.S.C. § 6926(d), which shows that RCRA holds actions by the states in equal regard to actions by the EPA. In addition, the provision that

permits the EPA to authorize state programs begins, "Any State which seeks to administer and enforce a hazardous waste program *pursuant to this subchapter* [Subchapter III] may develop and . . . submit to the Administrator an application . . . for authorization of such program." 42 U.S.C. § 6926(b) (emphasis added). In other words, the program that the state develops and that the EPA authorizes under this section constitutes a program pursuant to Subchapter III, indicating that a violation of a regulation under that program would be considered a violation of Subchapter III.

Likewise, § 6928, which authorizes the EPA to take action to enforce Subchapter III, states:

> In the case of a *violation of any requirement of this subchapter* [Subchapter III] where such violation occurs *in a State which is authorized* to carry out a hazardous waste program under section 6926 of this title, the Administrator shall give notice to the State in which such violation has occurred prior to issuing an order or commencing a civil action under this section.

42 U.S.C. § 6928(a)(2) (emphasis added). Under Johnson Controls' argument, there is no such thing as a violation of any requirement under Subchapter III in an authorized state, so this provision would be dead letter.[2] Finally, on multiple occasions, the EPA has expressly characterized state regulations in authorized states as Subchapter III requirements, 53 Fed. Reg. 28160, 28166 (July 26, 1988) (describing the process for authorized states to revise their regulations, and stating that "[o]nce EPA approves the revision, the State requirements become Subtitle C [codified as Subchapter III] RCRA requirements"); 52 Fed. Reg. 8704, 8708 (Mar. 19,

---

[2] In its reply brief, Johnson Controls notes that under the Hazardous and Solid Waste Amendments to RCRA, which were passed in 1984, certain federal regulations took immediate effect in all states, regardless of whether the state had an authorized program, so there could be both state and federal regulations in effect until the state updated its program to include the new federal regulations. However, the enforcement provision quoted above in § 6928(a)(2) was included when RCRA was passed in 1976. Pub. L. 94-580, 90 Stat. 2795 (1976). Since this provision did not contemplate the existence of dually applicable state and federal regulations at the time it was enacted, that possibility cannot justify Johnson Controls' argument.

1987) (same); 50 Fed. Reg. 26444, 26489 (June 26, 1985) (same), so violations of those requirements would qualify as violations of Subchapter III on that basis as well.

The Court acknowledges that some other district courts within this Circuit have adopted Johnson Controls' argument that violations of state regulations do not constitute Subchapter III violations for the purposes of the statutory delay period. *Clean Harbors Servs., Inc. v. Ill. Int'l Port Dist.*, No. 12 C 7837, 2013 WL 678271, at *3–5 (N.D. Ill. Feb. 25, 2013); *Evco Assocs., Inc. v. C.J. Saporito Plating Co.*, No. 93 C 2038, 1994 WL 687552, at *4 (N.D. Ill. Dec. 7, 1994). The Court respectfully declines to adopt the reasoning of those cases for several reasons. First, those courts relied primarily on the distinction between state and federal regulations, which, for the reasons explained above, the Court does not find to be meaningful in this context. Second, the authorities those cases cited in support of their conclusion, and which they characterized as representing the consensus on this issue, did not actually hold that violations of state regulations do not constitute Subchapter III violations. Rather, *Datacard*, 106 F.3d 1342; *Clorox Co. v. Chromium Corp.*, 158 F.R.D. 120 (N.D. Ill. 1994); and *City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F. Supp. 971, 979 (S.D. Ohio 1993) held only that (a)(1)(A) claims in authorized states must be based on state regulations, not federal regulations, which does not support the logical leap that (a)(1)(A) claims that are properly based on state regulations do not constitute claims respecting violations of Subchapter III. In addition, *Orange Environment, Inc. v. Cnty. of Orange*, 860 F. Supp. 1003, 1020 (S.D.N.Y. 1994) and *Thompson v. Thomas*, 680 F. Supp. 1, 3 (D.D.C. 1987) held that (a)(1)(A) claims are not available at all in authorized states, which even Johnson Controls does not argue is good law.[3]

_____

[3] Further, in a subsequent opinion in *Evco*, the court retracted the suggestion in its previous order that (a)(1)(A) claims are not available at all in authorized states. 1995 WL 571438, at *2, n.1 (N.D. Ill. Sept. 25, 1995).

Therefore, the Court respectfully parts company with those cases, and holds that violations of state regulations that are part of state programs authorized by the EPA under § 6926(b) constitute violations of Subchapter III for the purposes of the exception to the notice and delay period. Accordingly, the delay period is not an impediment to this claim, as if Plaintiffs have adequately pled violations of the state regulations, no delay period will have been required under § 6972(b)(1)(A), and if they have not done so, this claim will be dismissed for failure to state a claim.[4] Even then, a claim need not be successful to fall within the Subchapter III exception to the delay period, as compliance with the notice and delay provisions "is determined at the time the complaint is filed." *Datacard*, 106 F.3d at 1351. Violations of the provisions at issue here would constitute violations of Subchapter III, so even if Plaintiffs are ultimately unsuccessful on that claim, they will not have violated the delay period. The Court therefore declines to dismiss Count I on this basis.

### 2. Plaintiffs Failed to State a Claim for a Violation of RCRA upon which a Subsection (a)(1) Claim May be Based

The Court next considers whether Plaintiffs have adequately pled a violation of "any permit, standard, regulation, condition, requirement, prohibition, or order," as is required to state an (a)(1)(A) claim. Plaintiffs' complaint identifies three federal statutory provisions and six Indiana regulations that Johnson Controls is allegedly in violation of. The factual allegations in the complaint focus primarily on the extent of the TCE contamination in the neighborhood of the plant, which goes to the (a)(1)(B) claim for an endangerment of health and the environment. The

---

[4] The Court notes that Plaintiffs also assert violations of statutory provisions within Subchapter III, including 42 U.S.C. § 6924(u), (v), and § 6928(h). To the extent Plaintiffs adequately pled a violation of those provisions, the claim would be respecting a violation of Subchapter III. *Covington*, 358 F.3d at 636–37. As discussed below, however, these provisions impose no substantive obligations on Johnson Controls that it could have violated. Because there is no possibility that these particular provisions could give rise to a violation of Subchapter III, the Court does not rely on these allegations to find the claim timely.

complaint offers much less factual detail relevant to the (a)(1)(A) claim, however. In the section

of the complaint addressing RCRA violations, the complaint spends a number of paragraphs

paraphrasing each of the statutes and regulations at issue, and then alleges in a conclusory

fashion that Johnson Controls "is in violation of RCRA's and Indiana's parallel hazardous waste

regulations, set forth i[n] the preceding paragraphs 119 through 127, for its releases of hazardous

waste, and failure to conduct appropriate corrective [*sic*] or achieve closure, causing an imminent

substantial endangerment to human health and the environment." [DE 4 ¶ 128]. In moving to

dismiss, Johnson Controls argues that many of the provisions at issue do not even apply to it, and

that as to the others, Plaintiffs have failed to adequately allege that it is in current violation of the

provision. The Court first analyzes the statutory provisions at issue, and then turns to the state

regulations.

### a. Alleged Violations of 42 U.S.C. § 6924(u), (v), and § 6928(h)

Plaintiffs first argue that Johnson Controls violated three statutory provisions relative to

corrective action, including 42 U.S.C. § 6924(u) and (v), and § 6928(h). In general, corrective

action refers to the process by which facilities respond to and remediate past and present releases

of hazardous waste from their facility. Johnson Controls responds in part by arguing that these

provisions do not impose any substantive obligations on it that it could have violated, so the

complaint necessarily fails to state a claim for violations of these provisions. The Court agrees.

Subsections (u) and (v) of § 6924, which were added to RCRA in the Hazardous and

Solid Waste Amendments Act of 1984, require the EPA to take certain actions to expand the

corrective action requirements for hazardous waste facilities. Specifically, subsection (u) states

in full:

> Standards promulgated under this section shall require, and a permit issued after
> November 8, 1984, by the Administrator or a State shall require, corrective action
> for all releases of hazardous waste or constituents from any solid waste

management unit at a treatment, storage, or disposal facility seeking a permit under this subchapter, regardless of the time at which waste was placed in such unit. Permits issued under section 6925 of this title shall contain schedules of compliance for such corrective action (where such corrective action cannot be completed prior to issuance of the permit) and assurances of financial responsibility for completing such corrective action.

42 U.S.C. § 6924(u). Subsection (v) is structured similarly, and states:

As promptly as practicable after November 8, 1984, the Administrator shall amend the standards under this section regarding corrective action required at facilities for the treatment, storage, or disposal, of hazardous waste listed or identified under section 6921 of this title to require that corrective action be taken beyond the facility boundary where necessary to protect human health and the environment unless the owner or operator of the facility concerned demonstrates to the satisfaction of the Administrator that, despite the owner or operator's best efforts, the owner or operator was unable to obtain the necessary permission to undertake such action.

42 U.S.C. § 6924(v).

As Johnson Controls argues, though, nowhere do these provisions impose obligations directly on Johnson Controls or any facility. Subsection (u) governs the EPA's issuance of standards and permits, and subsection (v) requires the EPA to amend its standards in certain respects. Thus, while a facility could conceivably violate those standards or permits, it could not violate these provisions themselves, as these provisions only impose requirements on the EPA. *See Krafczek v. Exide Corp.*, No. A. 00-CV-1965, 2000 WL 1130088, at *2 (E.D. Penn. Aug. 9, 2000) ("Sections 6924(u) and 6924(v) merely require the Administrator to promulgate standards pertaining to corrective action."). Therefore, to the extent Johnson Controls has violated an obligation under RCRA relative to corrective action, the source of that obligation must be found elsewhere.

Section 6928(h) presents an even clearer case, as not only does it pertain only to the EPA, it merely gives the EPA discretionary authority and imposes no actual requirements on anyone. Section 6928(h) states:

Whenever on the basis of any information the Administrator determines that there is or has been a release of hazardous waste into the environment from a facility authorized to operate under section 6925(e) of this title [interim status facilities], the Administrator may issue an order requiring corrective action or such other response measure as he deems necessary to protect human health or the environment or the Administrator may commence a civil action in the United States district court in the district in which the facility is located for appropriate relief, including a temporary or permanent injunction.

42 U.S.C. § 6928(h)(1). While Plaintiffs are correct that this provision contemplates that interim status facilities like Johnson Controls will be subject to corrective action requirements, its plain language implements those requirements only through a discretionary action by the EPA: "the Administrator may issue an order . . . ." *Id.*; *USG Corp. v. Brown*, No. 89 C 2874, 1994 WL 654488, at *5–6 (N.D. Ill. Nov. 17, 1994) (agreeing that "§ 3008(h) is not self-executing, but rather requires affirmative action by the EPA," and holding that "defendants were not under any duty to remedy the release until the U.S. EPA determined that corrective action needed to be done").

Tellingly, while Plaintiffs repeatedly assert that Johnson Controls is obligated to take corrective action, they never indicate what corrective action it is supposed to take, or in what respect it has failed to do so. That is likely because those requirements are set forth, if at all, in the standards, permits, and orders discussed in these provisions; they are not imposed by these provisions themselves. However, Plaintiffs never assert that the EPA or IDEM have issued any such permits or orders as to Johnson Controls, or that any particular standard requires Johnson Controls to take corrective action. Absent any applicable source for a corrective action obligation, Johnson Controls cannot be in violation of such an obligation, so these provisions cannot provide a basis for Plaintiffs' claim.

In arguing to the contrary, Plaintiffs rely heavily on the Seventh Circuit's opinion in *National-Standard Co. v. Adamkus*, 881 F.2d 352 (7th Cir. 1989). *Adamkus* involved a dispute

between a hazardous waste facility and the EPA over whether the EPA had the authority to enter the facility to conduct an inspection. *Id.* at 353. In support of its authority to do so, the EPA cited § 6924(u), discussed above, and § 6927(a), which expressly authorizes the EPA to conduct inspections. The Seventh Circuit sided with the EPA and held that the EPA had the authority to conduct the inspections in question, but this case offers no support for Plaintiffs. First, *Adamkus* expressly limited its analysis to § 6927(a), and since that provision was dispositive, the court did not even discuss the parameters of § 6924(u), which is at issue here, except to note that § 6924(u) did not affect its analysis of § 6927(a). *Id.* at 358–61. Second, *Adamkus* involved the scope of the EPA's authority, not of individuals' rights under RCRA's citizen suit provisions. As just discussed, the fact that a statute may authorize or require the EPA to take certain action does not mean that the statute imposes direct substantive obligations on hazardous waste facilities upon which a citizen can base an (a)(1)(A) claim.

Much of Plaintiffs' argument as to these provisions rests on the premise that Congress included citizen suits in RCRA in order to fill in the gaps where the agency may be unable or unwilling to fully enforce RCRA's requirements. *See Datacard*, 106 F.3d at 1349 (noting that "the idea behind citizen suit enforcement is to unleash an army of private attorneys general to force cleanups when the government drags its feet"). Plaintiffs then cite to a number of sources discussing the EPA's authority, and reason that because they are acting as private attorneys general through this citizen suit, they are entitled to exercise that same authority. However, this reasoning finds no support in the text of the statute. A subsection (a)(1)(A) claim expressly requires a "violation of any permit, standard, regulation, condition, requirement, prohibition, or order" under RCRA. 42 U.S.C. § 6972(a)(1)(A). The EPA's authority is not so limited, as nothing in the corrective action provisions in question requires the facility to have violated any

"permit, standard, regulation, condition, requirement, prohibition, or order" before the EPA can act. Thus, the fact that the EPA can bring an action or exercise certain authority does not mean that a citizen can bring that same action or exercise that same authority through an (a)(1)(A) claim.

Furthermore, Plaintiffs' argument that they must be able to enforce these provisions through an (a)(1)(A) claim in order to fulfill the purpose of RCRA's citizen suits overlooks the availability of (a)(1)(B) claims. Under that subsection, a plaintiff need not allege any violation, and can bring an action whenever a facility has contributed to an imminent and substantial endangerment to health or the environment. 42 U.S.C. § 6972(a)(1)(B). Such an action can accomplish largely the same ends as the corrective action the EPA can impose through these statutory provisions, and Plaintiffs have in fact asserted such a claim here, so they do not need resort to subsection (a)(1)(A) to fulfill the purposes of RCRA's citizen suits. It is also instructive that subsection (a)(1)(B) requires a citizen suit to be based on an imminent and substantial endangerment to health or the environment, while the EPA has the authority to impose corrective action for any release, regardless of its severity. 42 U.S.C. § 6928(h), § 6972(a)(1)(B). If Plaintiffs had the same authority through an (a)(1)(A) claim as the EPA has under § 6928(h), then subsection (a)(1)(B)'s endangerment requirement would be meaningless, as all releases would be actionable under (a)(1)(A) regardless of their effects. The Court therefore concludes for all of these reasons that Plaintiffs have failed to state a claim for violations of § 6924(u), (v), or § 6928(h).

### b. Alleged Violations of State Regulations

Plaintiffs' complaint also cites six state regulations that Johnson Controls is allegedly in violation of: 40 C.F.R. § 264.100, .101, and .551, and 40 C.F.R. § 265.111, .115, and .117.[5] Johnson Controls addressed each provision in its motion to dismiss, but in responding to the motion, Plaintiffs only presented any argument as to § 265.111. Johnson Controls thus argues that Plaintiffs have waived any violations of the other provisions as bases for this claim. In their sur-reply, Plaintiffs note that they stated in a footnote in their response brief that, as to two of the provisions, "Plaintiffs reasonably anticipate facts developed in discovery will establish the applicability of these provisions to [Johnson Controls'] activities." That simply does not suffice; the possibility that discovery could lead to facts that support a claim does not relieve a plaintiff of the obligation to first plead that claim so as to put the defendant on notice of the claims against it. Accordingly, the Court finds that Plaintiffs have waived any argument that Johnson Controls is in violation of any of these regulations except for § 265.111.

Section 265.111 pertains to Johnson Controls' obligation to undergo closure of its facility as a facility for the treatment, storage, or disposal of hazardous waste. By way of background, RCRA requires any facility that qualifies as a treatment, storage, or disposal facility to apply for and receive a permit, at which point the facility becomes subject to a stringent set of regulations. 42 U.S.C. § 6925(a). Those regulations are much more burdensome than the regulations that apply to facilities that merely qualify as generators of hazardous waste. *See City of Chicago*, 511 U.S. at 331–32. Thus, RCRA gave an option to facilities like Johnson Controls that initially qualified as treatment, storage, or disposal facilities to cease the activities that qualified them for

---

[5] These are federal regulations, but Indiana has incorporated each of them by reference as part of the hazardous waste program authorized by the EPA under § 6926(b). 329 Ind. Admin. Code 3.1-9-1 (incorporating 40 C.F.R. part 264 by reference); 329 Ind. Admin. Code 3.1-10-1 (incorporating 40 C.F.R. part 265 by reference).

that designation and become subject to regulation as generators of hazardous waste instead. 40 C.F.R. § 265.110–115. Closure is the process by which a facility can do that.

Closure can itself be a demanding process, though. A facility must first prepare and submit a detailed closure plan. 40 C.F.R. § 265.112(b). The plan must include, among other elements, (1) a description of how each individual hazardous waste management unit at the facility will be closed in accordance with the closure performance standards; (2) a description of how final closure of the facility as a whole will be conducted in accordance with the closure performance standards; (3) a detailed description of the steps needed to remove or decontaminate all hazardous waste residues in accordance with the closure performance standards; and (4) a detailed description of the steps necessary to ensure compliance with the closure performance standards. *Id.* The performance standard against which each of these elements is measured is set forth in § 265.111, which states:

> The owner or operator must close the facility in a manner that:
>
> (a) Minimizes the need for further maintenance, and
>
> (b) Controls, minimizes or eliminates, to the extent necessary to protect human health and the environment, post-closure escape of hazardous waste, hazardous constituents, leachate, contaminated run-off, or hazardous waste decomposition products to the ground or surface waters or to the atmosphere . . . .

40 C.F.R. § 265.111.

Once a facility submits a closure plan, the state agency must provide the public with notice of the plan and an opportunity to submit comments and request modifications. 40 C.F.R. § 265.112(d)(4). The agency may also hold a public hearing if requested or at its own discretion. *Id.* The agency must ensure that the plan complies with all of the applicable closure regulations, and must approve, modify, or reject the plan. *Id.* Once the agency approves the plan, the facility must then undergo closure "in accordance with the approved closure plan." 40 C.F.R.

§ 265.113(a). Finally, once the facility has completed closure, it must submit "a certification that the hazardous waste management unit or facility, as applicable, has been closed in accordance with the specifications in the approved closure plan." 40 C.F.R. § 265.115.

In arguing that Johnson Controls has violated its closure obligations, however, Plaintiffs do not identify any particular deficiency by Johnson Controls as to any one of these requirements. Plaintiffs merely cite to the general performance standard that applies to the closure process as a whole, and argue that because contamination is still present in their neighborhood, Johnson Controls must have violated its closure obligations in some respect. These allegations are at too high a level of generality and are too lacking in detail to put Johnson Controls on notice of what of its conduct is actually complained of. There are many ways a facility could violate its closure obligations, and while the continuing presence of contamination may be consistent with a failure to properly complete closure, it does not on its own suggest that it is plausible, instead of merely possible, that a particular violation has occurred. The allegations in the complaint therefore fall short of what is required to state a claim under the notice pleading standard.

By comparison, in other cases addressing closure violations, plaintiffs have properly plead these claims by alleging violations of particular aspects of the closure regulations. For example, in *United States v. Production Plated Plastics, Inc.*, 762 F. Supp. 722, 727 (W.D. Mich. 1991), the facility violated its closure obligations because it "entirely failed to implement the approved [closure] plan." However, Johnson Controls' approved closure plan is not in the record in this matter, and Plaintiffs have not alleged any respect in which Johnson Controls has failed to comply with the plan. Similarly, in *Forest Park*, 881 F. Supp. 2d at 968–69, the defendant failed to draft and maintain a written closure plan at all, and in *Goodwill Indus. of Chicago & Cook*

*Cnty. v. Valspar Corp.*, No. 89 C 5116, 1990 WL 485455, at *2 (N.D. Ill. Mar. 9, 1990), on

which Plaintiffs heavily rely, the defendant submitted a deficient closure plan by omitting

numerous storage tanks that were required to undergo closure. But here, Plaintiffs' complaint

alleges that Johnson Controls did submit and receive approval for a closure plan, and it does not

allege any way in which the plan was deficient. In fact, in their response brief, Plaintiffs appear

to disavow such a claim, stating that "Plaintiffs' claim does not lie with [Johnson Controls']

closure plans *per se*." [DE 30 p. 25 n.30].

Plaintiffs back away from that statement in their sur-reply, arguing that Johnson Controls

omitted from its closure plan several additional waste management units that were required to

undergo closure. Such allegations are entirely absent from the complaint, though, and go well

beyond merely illustrating the plausibility of facts that are properly alleged within the complaint.

Therefore, the Court declines to consider those external facts as possible bases for this claim.

Because the facts alleged in the complaint fall well short of putting Johnson Controls on notice

of the actual claim against it, Count I fails to state a claim for which relief can be granted and

must be dismissed.

Johnson Controls argues further that the claim should be dismissed with prejudice

because it completed closure years ago and is now classified only as a generator of hazardous

waste. If true, that would mean the closure regulations no longer apply to it and that any closure

violations would be wholly past violations, which are not actionable under subsection (a)(1)(A).

*Browning v. Flexsteel Indus., Inc.*, 959 F. Supp. 2d 1134, 1145–49 (N.D. Ind. 2013). In support

of this argument, Johnson Controls relies on an August 16, 2000 letter from IDEM to Johnson

Controls acknowledging Johnson Controls' submission of a certification that it had completed

closure. In the letter, the agency stated that "total closure is completed as required by 40 CFR

265 subpart G" and that "the facility status is now classified as a large quantity generator." [DE 17-2].

The Court cannot accept Johnson Controls' argument, though, because Johnson Controls has not cited any authority that attributes meaning to such a letter from an agency. In fact, as Johnson Controls expressly argues, the regulations do not contemplate any formal acceptance by the agency of a facility's certification that it has completed closure. *See* 40 C.F.R. § 265.115 (requiring the facility, not the agency, to certify that closure has been completed). In addition, under 40 C.F.R. § 265.1(b), "the standards of this part [Part 265] . . . apply to owners and operators of facilities that treat, store or dispose of hazardous waste . . . until applicable part 265 closure and post-closure responsibilities are fulfilled . . . ." 40 C.F.R. § 265.1(b). If this provision stated that Part 265 applies until the agency certifies that the facility's closure responsibilities are fulfilled, Johnson Controls' argument might be well-taken. However, this provision requires actual fulfillment of the closure requirements, not merely a certification by the facility or the agency. Thus, if Plaintiffs can show that Johnson Controls has not actually completed closure, then Part 265 still applies and Johnson Controls could be in current violation of the closure requirements. *See Cornerstone Realty, Inc. v. Dresser Rand Co.*, 993 F. Supp. 107, 117 (D. Conn. 1998) (holding that "the obligation of an owner or operator of a hazardous waste facility to close the facility continues while the facility remains unclosed with hazardous waste remaining at the site," and that "the failure to close the facility may constitute a continuing violation" of the closure requirements); *Valspar*, 1990 WL 485455, at *4–5 (finding that the plaintiffs adequately pled violations of the facility's closure obligations even though the facility had submitted a certification that it had completed closure).

Therefore, the Court grants the motion to dismiss as to Count I for failure to state a claim, but dismisses the count without prejudice and grants Plaintiffs leave to amend.

**B.      Count II: Subsection (a)(1)(B) Claim**

Finally, Johnson Controls moves to dismiss Count II, which asserts a claim under subsection (a)(1)(B) for contributing to an imminent and substantial endangerment to health and the environment, for failure to comply with the statutory notice and delay period. Under § 6972(b)(2)(A), "No action may be commenced under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice of the endangerment . . . except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of subchapter III of this chapter." 42 U.S.C. § 6972(b)(2)(A). Plaintiffs argue in response both that Count II is respecting a violation of Subchapter III, thus qualifying for the exception to the delay period, and that it was properly joined with Count I, which was timely filed, making it timely as part of a "hybrid" complaint. The Court agrees with the latter argument, so it need not also consider whether the particular (a)(1)(B) endangerment claim is respecting a violation of Subchapter III so as to qualify for the Subchapter III exception.

Both parties agree that the Seventh Circuit's opinion in *Datacard* is binding precedent on the applicability of the statutory notice and delay provisions to a "hybrid" complaint, meaning a complaint that contains "both a citizen suit claim subject to RCRA's delay period and one immune from the delay requirement." 106 F.3d at 1351. In *Datacard*, the plaintiff filed suit before the 90-day waiting period applicable to the complaint's (a)(1)(B) claim had elapsed, but the complaint also included an (a)(1)(A) claim respecting a Subchapter III violation, which the plaintiff "was entitled to bring . . . without delay." *Id.* Even though the (a)(1)(A) claim was ultimately unsuccessful, the Seventh Circuit held that the timely (a)(1)(A) claim exempted the otherwise-untimely (a)(1)(B) claim from the statutory delay requirement, so the plaintiff "was

not required to wait 90 days before filing its hybrid complaint." *Datacard*, 106 F.3d at 1351 (adopting the Second Circuit's reasoning in *Dague v. City of Burlington*, 935 F.2d 1343, 1352 (2d Cir. 1991)); *see also Covington v. Jefferson Cnty.*, 358 F.3d 626, 637 (9th Cir. 2004) (also adopting *Dague's* rule as to hybrid complaints).

Johnson Controls accepts this premise, but argues that Plaintiffs cannot invoke the hybrid complaint exception because their (a)(1)(A) claims are too frivolous. In *Datacard*, the Seventh Circuit acknowledged the possibility for abuse of the hybrid complaint exception, and qualified its holding by stating that "it is important to note that although [the plaintiff's] subsection (a)(1)(A) hazardous waste claim ultimately proved unsuccessful, it was not frivolous." 106 F.3d at 1351. The court thus stated: "If future plaintiffs should attempt an end run around RCRA's delay requirements by alleging a meritless hazardous waste claim in a hybrid complaint, the district court could sanction the plaintiffs under Rule 11 and dismiss the case to ensure full compliance with the delay period." *Id.*

Here, although the Court has dismissed the subsection (a)(1)(A) claim for failure to state a claim, it does not find that the claim is frivolous or deserving of sanctions under Rule 11, as would be required to invoke this sanction. Plaintiffs' complaint did not allege enough facts to plead a violation of RCRA, but Johnson Controls has not shown that such a claim would be foreclosed, and it is conceivable that Plaintiffs could adequately plead a RCRA violation in an amended complaint. Therefore, the Court holds that Count II is timely as part of a hybrid complaint, and declines to dismiss it for violation of the statutory delay period.

## IV.  CONCLUSION

As to Johnson Controls' Motion to Strike or File Sur-Surreply [DE 55], the Court DENIES the request to strike, but GRANTS leave to file a sur-surreply, and has considered that filing in resolving the motion to dismiss. As to the Motion to Dismiss [DE 16], the motion is

GRANTED as to Count I, which is dismissed without prejudice, and DENIED as to Count II.

The Court GRANTS Plaintiffs leave to file an amended complaint by April 6, 2015.

SO ORDERED.

ENTERED:  March 2, 2015

                                        _____/s/ JON E. DEGUILIO_____
                                        Judge
                                        United States District Court