# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| AMOS HOSTETLER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CAUSE NO: 3:15-cv-226-JD-MGG |
| | ) |
| JOHNSON CONTROLS, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

On August 15, 2016, Defendant, Johnson Controls, Inc. ("JCI"), filed its Motion for Entry of a *Lone Pine* Case Management Order. On September 15, 2016, Plaintiffs filed their Response in Opposition to JCI's instant motion for a *Lone Pine* order. JCI's instant motion became ripe on October 17, 2016, when JCI filed its relevant reply brief. For the reasons stated below, the Court denies JCI's motion. The Court also addresses case management deadlines in this case and the appointment of a Special Master for all discovery disputes.

## I. RELEVANT BACKGROUND

This a putative class action against JCI and Tocon Holdings, LLC ("Tocon") arising out of alleged environmental contamination originated from a manufacturing plant in Goshen, Indiana operated by JCI from approximately 1937 through 2006 and then sold to Tocon in 2007. Plaintiffs contend that JCI's manufacturing process led to the discharge of hazardous chemicals, including trichloroethylene ("TCE"), into the ground contaminating groundwater and creating a contamination plume that migrated under the surrounding neighborhood. In 1997, JCI entered a Voluntary Remediation Agreement ("VRA") with the Indiana Department of Environmental Management ("IDEM") that established a remediation plan and obligated JCI to produce reports

for public dissemination regarding their remediation efforts. When Tocon purchased the plant, they allegedly knew about the contamination, did nothing to stop it, and failed to warn residents of its dangers. Moreover, Tocon began demolition of the plant in 2013, which allegedly left debris on the property containing other hazardous materials such as asbestos, lead, mercury, and PCBs with no measures to prevent further contamination of the soil and groundwater.

Claiming personal injury and property damage, Plaintiffs filed their complaint in this action in state court on May 30, 2014, asserting claims arising under state law against JCI and Tocon, including common law claims for trespass, nuisance, negligence, negligent infliction of emotional distress, and punitive damages along with a statutory environmental legal action claim. The complaint seeks compensatory and punitive damages from both defendants as well as an injunction requiring both defendants to remediate the contamination to non-detect levels.

Litigation, including discovery, proceeded after the state court denied JCI's motion to dismiss.[1] On January 14, 2015, Plaintiffs filed a motion for class certification asking the Court to certify a class on the limited issues of liability and general causation. [DE 30 at 4]. On March 6, 2015, and at JCI's request, the state court continued its hearing on the motion for class certification until June 30, 2015, and simultaneously appointed Senior Judge Duffin as Special Master as to all discovery issues. [DE 11 at 8]. On April 20, 2015, JCI then filed a motion to compel asking the Court to order Plaintiffs to produce damages information in response to discovery requests that it arguably needed to prepare for the class certification hearing. [DE 178-30 at 3, 5]. The state court referred JCI's motion to compel to Special Master Duffin on April

---

[1] Tocon is in bankruptcy proceedings and therefore has not been active in this litigation, although it technically remains a defendant.

21, 2015, [DE 11 at 8]. On May 5, 2015, once the motion to compel was ripe, Judge Duffin held a hearing on the motion (hereinafter "Duffin Hearing").[2]

In response to JCI's motion to compel, Plaintiffs argued that JCI's request for individual damages information, in the form of expert TCE dose and duration calculations, was premature because Plaintiffs' pending motion for class certification sought a liability-only class as the first phase of litigation to be followed by a damages phase, if necessary after the liability question was resolved. [DE 178-30 at 4–5]. In support, Plaintiffs cited to *7-Eleven, Inc. v. Bowens*, 857 N.E.2d 382, 389 (Ind. Ct. App. 2006), in which the court approved of such a bifurcated approach to a similar environmental class action because "the trial court's certification of class as to the issues of liability and general causation is intended to reduce repetitious litigation and resolve the questions that can be applied to the class as a whole."

In addition, Plaintiffs contended that the damages information sought by JCI was irrelevant to the class certification hearing scheduled in the state court. [DE 178-30 at 5–6]. To rebut JCI's Rule 23 argument that none of the named Plaintiffs would be "typical" of the class they intend to represent or "adequate" class representatives, Plaintiffs relied upon *Stoll v. Kraft Foods Glob., Inc.*, No. 1:09-CV-0364-TWP-DML, 2010 WL 3613828, at *5 (S.D. Ind. Sept. 6, 2010), in which the Southern District of Indiana rejected a parallel argument in another toxic tort case. *See also Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003) ("Whether a particular class member suffered any legally compensable harm and if so in what dollar amount are questions that the judge reserved for individual hearings if and when [defendant] is

---

[2] JCI attached an excerpted one-page version of the Duffin transcript to its motion for *Lone Pine* order. [DE 178-29 at 3]. On July 20, 2015, the parties attached the entire Duffin transcript as an exhibit to their Joint Report of the Parties' Rule 26(f) Planning Meeting. [DE 29-1]. The substance of JCI's motion to compel before the state court is reflected in Plaintiffs' response brief dated April 24, 2015, and attached as an exhibit to JCI's instant motion for *Lone Pine* order. [DE 178-30].

3

determined to have contaminated the soil and water under the class members' homes in violation of federal or state law."). As for commonality and efficiency, Plaintiffs cited *Mejdreck v. Lockformer Co.*, No. 01 C 6107, 2002 WL 1838141, at *3 (N.D. Ill. Aug. 12, 2002), *aff'd sub nom. Mejdrech.*, 319 F.3d 910 for the proposition that for class certification, "the characteristics of Plaintiffs need not be identical so long as there is a 'common nucleus of operative fact.'"

At the Duffin Hearing, and presumably in briefing its motion to compel, JCI cited multiple cases in which class certification was denied or summary judgment granted because the plaintiffs failed to produce sufficient evidence of individual damages, or specific causation. *See Parko v. Shell Oil Co.*, 739 F.3d 1083, 1086–87 (7th Cir. 2014); *C.W. v. Textron, Inc.*, No. 3:10 CV 87 PPS, 2014 WL 4979211, at *3–*6 (N.D. Ind. Oct. 3, 2014), *aff'd but criticized sub nom. C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827 (7th Cir. 2015); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (holding that Fed. R. Civ. P. 23(b)(2) requires a class to share a common contention that is capable of class-wide resolution rather than different remedies for each class member). At the hearing, JCI's counsel also suggested that the state court judge had already held that Plaintiffs were required to complete discovery related to all the individual plaintiffs, presumably including their damages, by the discovery deadline in December 2015. [DE 29-1 at 3–4, 4:17–5:12].

On May 28, 2015, before any final order was issued on JCI's motion to compel and before the class certification hearing was held, JCI removed the action to this Court. Plaintiffs promptly filed two motions to remand on June 26, 2015 [DE 21] and July 10, 2015 [DE 27]. At a preliminary pretrial conference on July 28, 2015, the Court consolidated the motions for remand, but refused to stay discovery noting that the Court would establish its own discovery

4

deadlines and a briefing schedule for Plaintiffs' motion for class certification if the consolidated motion for remand were denied. [DE 32 at 2].

At the same preliminary pretrial conference, Court proposed consolidating this case with its sister case, *Schmucker v. Johnson Controls Inc.*, Cause No. 3:14-cv-1593-JD-MGG[3], "then bifurcating it to have discovery on liability only, leaving discovery as to class action and damages pending the Court's ruling on liability." [DE 35 at 12–13]. In response to the Court's proposal, the parties presented the identical arguments regarding bifurcation that had been central to JCI's motion to compel before the state court. [DE 35 at 13–17]. As a consequence, the Court did not consolidate the two cases or reach any conclusion as to the propriety of bifurcation. [DE 32].

On March 29, 2016, while the consolidated motion for remand was under advisement, the Court dismissed Plaintiffs' motion for class certification based on the parties' agreement that the remand issue should be resolved before any consideration of class certification. [DE 110]. Accordingly, the Court provided Plaintiffs leave to refile their motion for class certification after resolution of their consolidated motion to remand. [DE 110 at 1]. Discovery continued leading the parties to file competing discovery motions in an attempt to resolve disputes regarding JCI's failure to produce documents responsive to Plaintiffs' discovery requests on two issues. [DE 123, 129, 148, 162]. In addition, JCI filed its first motion for *Lone Pine* order seeking production of the damages information at issue its motion to compel in state court. [DE 166]. On July 11, 2016, the Court denied the consolidated motion to remand. [DE 167].

---

[3] The *Schmucker* Plaintiffs initiated their case in this Court rather than in state as the *Hostetler* Plaintiffs did because they raised a claim under the federal Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq*. The *Schmucker* RCRA claim is based on overlapping facts related to the JCI site in Goshen, but does not include any claims for personal injury that may have been proper in state court.

5

With the motion to remand resolved, the Court denied without prejudice the pending discovery motions and JCI's original motion for *Lone Pine* order with leave to refile should the parties fail to resolve their disputes. [DE 171]. With parts of their disputes resolved, Plaintiffs filed three motions to compel and one motion for leave to file newly discovered evidence regarding one of the motions to compel. [DE 177, 184, 201, 204]. JCI filed the renewed motion for *Lone Pine* order at issue here on September 15, 2016. [DE 178]. JCI later filed a cross motion for protective order related to one of Plaintiffs' motions to compel. [DE 212]. None of Plaintiffs' pending motions nor JCI's pending motion for protective order address the issue of Plaintiffs' production of damages evidence as raised by JCI in its motion to compel before the state court.[4] Instead, JCI seeks production of that same damages evidence through its *Lone Pine* motion. The briefing of the current *Lone Pine* motion argues the same issues related to the timing and scope of class certification and bifurcation raised before the state court and Special Master Duffin in May 2015.

## II. ANALYSIS

### A. *Lone Pine* Legal Standard

*Lone Pine* orders are named after the 1986 environmental contamination case from which they originated. *Lore v. Lone Pine Corp.*, No. L-33606085, 1986 WL 637507 (N.J. Super. Ct. Law Div. Nov. 18, 1986). *Lone Pine* orders are case management orders, used typically in complex mass tort litigation, that require plaintiffs to produce *prima facie* evidence in support of their claims or risk dismissal of their case. *Id.* at *1–*3. While the Seventh Circuit has yet to address the proper role of *Lone Pine* orders, other circuits have and district courts within this Circuit have applied those principles.

---

[4] Notably, the identical motions were filed in *Schmucker* and remain pending. [3:14-cv-1593-JD-MGG, DE 193, 195, 207, 210, 219].

6

"The basic purpose of a *Lone Pine* order is to identify and cull potentially meritless claims and streamline litigation in complex cases involving numerous claimants, such as this one." *Baker v. Chevron USA, Inc.*, No. 105-CV-227, 2007 WL 315346, at *1 (S.D. Ohio Jan. 30, 2007). "In the federal courts, [*Lone Pine*] orders are issued under the wide discretion afforded district judges over the management of discovery under Fed. R. Civ. P. 16." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000) (affirming district court's discretion to manage complex tort litigation and the court's specific use of a *Lone Pine* order where "information regarding the nature of [the plaintiff's] injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing that the named defendants were responsible for his injuries" were lacking in the plaintiff's complaint). Indeed, Fed. R. Civ. P. 16(c)(2)(L) explicitly permits the court to "consider and take appropriate action on . . . [the adoption of] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems."

Yet *Lone Pine* orders are also viewed as extraordinary remedies that should be issued only in exceptional cases "after the defendant has made a clear showing of significant evidence calling into question the plaintiffs' ability" to produce evidence to establish the critical elements of causation and damages. *McManaway v. KRB, Inc.*, 265 F.R.D. 384, 388 (S.D. Ind. 2009); *but see In re Vioxx Prods. Liab. Litig.*, 557 F. Supp 2d 741, 743 (E.D. La. 2008) (citing district court cases in the Second, Fifth, and Eighth Circuits suggesting that *Lone Pine* orders are routine in mass tort litigation). Regardless of how regularly they are used, all *Lone Pine* orders should balance efficiency and equity because they provide "a tremendous advantage to defendants wishing to dispose of frivolous claims quickly." *Id.* at 385 (quoting James P. Muehlberger &

Boyd S. Hoekel, *An Overview of Lone Pine Orders in Toxic Tort Litigation*, DEF. COUNS. J. 366, 367 (2004).  In light of this clear benefit to defendants, "[s]ome courts have entered [*Lone Pine*] orders *only* after a state or federal agency has issued a report that either provides much of the information called for in the order or undercuts the plaintiffs' claim for personal injuries."  *Id.* (quoting Muehlberger & Hoekel, *supra*, at 370).

Furthermore, *Lone Pine* orders have been criticized because they give "courts the means to ignore existing procedural rules and safeguards."  *Simeone v. Girard City Bd. of Educ.*, 872 N.E.2d 344, 350 (2007).  Accordingly, courts should be careful to avoid *Lone Pine* orders when they "cut[] off or severely limit[] the litigant's right to discovery [or] closely resemble[] summary judgment."  *Id.*  With these caveats in mind, courts generally consider the following five factors when deciding whether to impose a *Lone Pine* order:  "(1) the posture of the action, (2) any peculiar case management needs of the case, (3) external agency decision that may bear on the case, (4) the availability, by statute or rule, of other procedural devices, and (5) the type of injury alleged and its causes."  *Adkisson v. Jacobs Eng'g Group, Inc.*, Nos. 3:13-CV-505-TAV-HBG, 3:13-CV-666-TAV-HBG, 3:14-CV-20-TAV-HBG, 3:15-CV-17-TAV-HBG, 3:15-CV-274-TAV-HBG, 3:15-CV-420-TAV-HBG, 3:15-CV-460-TAV-HBG, 3:15-CV-462-TAV-HBG, 2016 WL 4079531, at *3 (E.D. Tenn. July 29, 2016); *Trujillo v. Ametek, Inc.*, CASE NO. 3:15-cv-1394-GPC-BGS, 2016 WL 3552029, at *2 (S.D. Cal. June 28, 2016); *In re Digitek® Prod. Liab. Litig.*, 264 F.R.D. 249, 256 (S.D. W. Va. 2010).

**B.    Issue Presented in JCI's Motion for *Lone Pine* Order**

Here, JCI contends that exceptional circumstances warrant a *Lone Pine* order in this case.  According to JCI, Plaintiffs' complaint does not articulate the specific injuries to the named Plaintiffs based on their exposure to the toxic chemicals migrating from the JCI site.  Citing

environmental reports and deposition testimony from the named Plaintiffs, JCI asserts that Plaintiffs have produced virtually no evidence of cognizable personal injury. Moreover, JCI contends that some of the named Plaintiffs could not have suffered illness or disease as the result of TCE exposure because they were never exposed to TCE in the groundwater and the air. Similarly, JCI argues that some of the named Plaintiffs could not have suffered from decreased property values because they do not own the homes where they were allegedly exposed to the toxic chemicals.

JCI rejects the named Plaintiffs' explanation that they need not conduct expert discovery to determine the dose and duration of exposure of each named Plaintiff at this stage of litigation. As alluded to above, Plaintiffs contend that efficiencies will be gained if this case proceeds in a bifurcated manner. Citing *7-Eleven, Inc.*, 857 N.E.2d at 395 and *Mejdrech*, 319 F.3d at 912 in support, Plaintiffs indicate their intent to seek class certification on and resolve the issues of liability and general causation only before turning to discovery and litigation related to the specific damages of the named Plaintiffs. Plaintiffs recommend such staged litigation to avoid the expensive dose and duration discovery and litigation should the Court find no liability and general causation on Defendants' part for the class's exposure to toxic chemicals.

As JCI correctly notes, the issue of bifurcation, although raised multiple times in this litigation, has not yet been decided by this Court. Moreover, there is no related motion for class certification currently before the Court and no case management order has been issued to create the staged litigation Plaintiffs seek. Plaintiffs explain that they have yet to file another motion for class certification because they are considering the possibility of another motion to remand.

Regardless, JCI opposes the bifurcated case management plan Plaintiffs argue is warranted in this case. JCI contends that neither the Court nor a jury can reach any conclusion

9

about liability and general causation if there is no evidence of damages on the part of the named Plaintiffs. As noted by JCI, the elements of a toxic tort claim under Indiana law include (1) actual exposure to a toxic chemical; (2) actual personal injury; (3) general causation or "whether a particular agent can cause a particular illness," and (4) proximate causation or "whether the agent in fact caused the particular plaintiff's illness." *Aurand v. Norfolk S. Ry. Co.*, 802 F. Supp. 2d 950, 953 (N.D. Ind. 2011); *see also C.W. v. Textron, Inc.*, No. 3:10 CV 87 PPS, 2014 WL 1047940, at *7 (N.D. Ind. Mar. 17, 2014), *aff'd sub nom. C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827 (7th Cir. 2015); *Pardue v. Perdue Famrs, Inc.*, 925 N.E.2d 482, 487 (Ind. Ct. App. 2010); *Hannan v. Pest Control Servs., Inc.*, 734 N.E.2d 674, 685 (Ind. Ct. App. 2000). Based on the alleged lack of any evidence of damages combined with Plaintiffs' refusal to conduct the dose and duration expert discovery before class certification, JCI now asks the Court to propel this case forward by entering a *Lone Pine* order requiring the named Plaintiffs to produce *prima facie* evidence of their injuries and the causation of those injuries. JCI argues that a *Lone Pine* order will streamline litigation of this complex tort case, which it contends cannot be resolved in Plaintiffs' favor without evidence of Plaintiffs' actual exposure and their actual injuries as well as evidence linking the injuries to the exposure.

While the Court's decision on JCI's motion for *Lone Pine* order, regardless of its outcome, will affect the availability of Plaintiffs' preferred bifurcated litigation strategy going forward, there is no need for the Court to decide directly whether bifurcation is appropriate in this case in order to decide whether the requisite exceptional circumstances justify a *Lone Pine* order. Analysis of the *Lone Pine* factors alone, as shown below, demonstrates that this case does not present sufficiently exceptional circumstances to warrant a *Lone Pine* order.

### C. *Lone Pine* Factors Analysis

#### 1. Posture of Action

*Lone Pine* orders are "disfavored in the early stages of the proceedings where no meaningful discovery has taken place." *Adkisson*, 2016 WL 4079531, at *4 (citing *Simeone*, 872 N.E.2d at 352). Moreover, *Lone Pine* orders should issue only "after the defendant has made a clear showing of significant evidence calling into question the plaintiffs' ability to bring forward necessary medical causation and other scientific information." *McManaway*, 265 F.R.D. at 388.

In this case, discovery has been underway since before this case was removed to this Court in May 2015. In addition, discovery did not stop even while Plaintiffs' consolidated motion to remand was being decided. Despite clear evidence that this case is no longer in its earliest stages, insufficient meaningful discovery has occurred on the issue of individual damages because of Plaintiffs' litigation strategy pursuing remand followed by class certification and bifurcation to address the issues of liability and general causation first. As shown in the transcript of the discovery hearing before Special Master Duffin in early May 2015 before removal, the question of the propriety of bifurcation was to be resolved in the state court's class certification analysis. Similarly, bifurcation is better decided in conjunction with the class certification analysis still anticipated more than 18 months later.

Furthermore, JCI has not made a clear showing of significant evidence to show that Plaintiffs cannot present sufficient medical causation and other scientific information to succeed on their toxic tort claim. *See id.* JCI has cited to the current quantum of evidence in the record, which includes environmental reports, Plaintiffs' deposition testimony, and Plaintiffs' medical records in an attempt to show Plaintiffs' inability to produce evidence of damages. Yet JCI cannot, at this time, show that any dose and duration expert discovery Plaintiffs could present

would preclude liability. Additionally, no discovery deadline has been set by this Court since the consolidated motion to remand was denied and the class certification process, which will resolve the bifurcation question, remains undecided.

Lastly, by filing its motion for *Lone Pine* order, JCI essentially asks this Court to compel production of discovery from Plaintiffs for a second time. The arguments presented to Special Master Duffin during the state court proceedings duplicate those raised here. Special Master Duffin may not have issued a final disposition of JCI's motion to compel. He did, however, essentially state that Plaintiffs cannot produce information they do not have. [*See* DE 29-1 at 10, 31:20–32:24; 12, 37:23–25]. From that, Special Master implied that JCI should pursue summary judgment when he stated that "[i]f they've given you everything they have and it's not adequate to survive a summary judgment, you [JCI] win." [DE 29-1 at 12, 38:2–4]. Nothing in the instant motion for *Lone Pine* order convinces this Court that Special Master Duffin's assessment of the procedural posture in this case has changed.

Therefore, the first factor weighs against a *Lone Pine* order.

### 2. Peculiar Case Management Needs

"Courts are generally more inclined to issue Lone Pine orders in cases involving hundreds or more plaintiffs and/or defendants." *Adkisson*, 2016 WL 4079531, at *5. This case has its complexities, but it does not involve hundreds of plaintiffs at this time. Therefore, the case remains manageable without the dramatic imposition of a *Lone Pine* order.

Moreover, a *Lone Pine* order "should not be considered a substitute for or another species of a motion for summary judgment." *McManaway*, 265 F.R.D. at 388. As discussed above, JCI appears to be seeking a *Lone Pine* order as an alternative to the summary judgment process to address Plaintiffs' failure to produce what it believes to be dispositive information about

individual injuries and damages. As such, JCI has not shown that this case has peculiar enough case management needs to justify a *Lone Pine* order.

### 3. External Agency Decisions that May Affect Merits

Decisions of external regulatory agencies that sound the "all clear," or otherwise show no exposure or possibility of injury from any exposure, could support entrance of a *Lone Pine* order. *In re Digitek*, 264 F.R.D. at 259. Here no such "all clear" has sounded. JCI entered a Voluntary Remediation Agreement with IDEM to counteract clear contamination and avoid further regulatory sanctions. JCI maintained its remediation efforts for years and even monitored remediation after Tocon purchased the Site. There is no regulatory decision that suggests there is no contamination or that injury could not be caused by the toxic chemical in the contamination plume. As such, this Court cannot ascertain at this point what effect IDEM's efforts will have on the merits of this case. Therefore, like in *Adkisson*, this factor neither favors nor disfavors a *Lone Pine* order. *See* 2016 Wl 4079531, at *6.

### 4. Availability of Other Procedural Devices

"Resorting to crafting and applying a *Lone Pine* order should only occur where existing procedural devices explicitly at the disposal of the parties by statute and federal rule have been exhausted or where they cannot accommodate the unique issues of this litigation." *In re Digitek*, 264 F.R.D. at 259. Here, JCI has not exhausted the range of normal procedural mechanisms available to it to address what it perceives to be Plaintiffs' deficient discovery production. As already discussed, summary judgment is an option that JCI has not pursued. "[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotations and citations omitted).

13

Instead of using this procedural mechanism to hold Plaintiffs accountable for its alleged evidence shortfall, JCI pursues a very unusual *Lone Pine* order. Instead of requesting that the Court propel the class certification process forward, JCI filed the instant motion. Both JCI's and Plaintiffs' energies devoted to the instant *Lone Pine* order could have more effectively narrowed the scope of this litigation through those existing procedural devices. Therefore, this factor weighs against a *Lone Pine* order as well.

### 5. Type of Injuries Alleged and Their Causes

When causation is likely to be "highly contentious and involve much expert testimony[,] Daubert hearings and motion *in limine* practice are available to challenge such evidence." *Adkisson*, 216 WL 4079531, at *7 (citations omitted). The parties here agree that the specific causation element requires, at the very least, expert discovery on the dose and duration of Plaintiffs' alleged exposure to the toxic chemicals. Expert medical evidence is also likely to be central to the litigation of this case. Indeed, this evidence of the named Plaintiffs' specific injuries and their cause is exactly what JCI seeks through the instant motion. On the other side, Plaintiffs wish to delay this allegedly important and expensive expert discovery until they are certain that the case will proceed on the merits to the point where it is needed. Given the key role that this expert evidence is likely to play, Plaintiffs' type of alleged injuries and their causes weight against a *Lone Pine* order.

### 6. *Lone Pine* Order is Not Warranted

As shown above, none of the five *Lone Pine* factors favor issuance of a *Lone Pine* order. The Court is most convinced that other procedural mechanisms—especially motions for summary judgment, the class certification process, *Daubert* motions, and motion *in limine*—exist

for JCI to use to address what it perceives to be Plaintiffs' failure to prove its case. Therefore, the Court declines to issue a *Lone Pine* order as JCI requests.

        **D.**     **Appointment of Special Master**

As stated above, the state court appointed Senior Judge Duffin as Special Master as to all discovery issues in an order dated March 6, 2015. [DE 11 at 8]. Special Master Duffin then held a hearing regarding JCI's motion to compel on May 5, 2015. [DE 29-1]. This Court sees no evidence that Special Master Duffin's appointment was ever vacated in state court or in this Court since removal. Yet even though the parties have appeared before this Court on multiple occasions, they have not mentioned the appointment of Special Master Duffin. The parties' omission is particularly striking given the extent of discovery disputes now pending before this Court and this Court's admonition in its order dated July 19, 2016, that

> in comparison to other similarly complex cases, this Court has spent an inordinate amount of time sifting through the parties' multiplicity of filings [and] [s]hould future filings confirm that the parties cannot manage discovery effectively on their own, the Court will pursue appointing a special master to resolved any discovery disputes all at the expense of the non-prevailing party as allowed under Fed. R. Civ. P. 53(a)(1)(C) and 53(g).

[DE 171 at 5].

Therefore, the Court **ORDERS** the parties to file a joint status report by **February 8, 2017**, (1) informing the Court of the status of Special Master Duffin's appointment to address discovery disputes in this case; (2) showing cause why the parties have not used Special Master Duffin's services in the multitude of discovery disputes raised in this action since it was removed; and (3) reporting any objection from any party in using Special Master Duffin to resolve the pending, and any future, discovery disputes before the Court. The Court acknowledges that the pending discovery motions are identical to those filed simultaneously in *Schmucker v. Johnson Controls, Inc.* As a result, the parties' joint status report should reflect the

*Schmucker* Plaintiffs' position on the use of Special Master Duffin going forward. The Court will not consider the pending discovery motions [*Schmucker*, DE 193, 195, 207, 210, 219; *Hostetler*, DE 177, 184, 201, 204, 212] until either Special Master Duffin addresses the motions or the parties convince the Court to vacate Special Master Duffin's appointment.

## III. CONCLUSION

For the reasons discussed above, the Court **DENIES** JCI's motion for *Lone Pine* order. [DE 178]. The Court **REMINDS** the parties of their ongoing obligation under Fed. R. Civ. P. 26(e) to supplement its production of information responsive to propounded discovery requests.

The Court also **ORDERS** the parties to submit a joint status report by **February 8, 2017**, (1) informing the Court of the status of Special Master Duffin's appointment to address discovery disputes in this case; (2) explaining why the parties have not used Special Master Duffin's services in the multitude of discovery disputes raised in this action since it was removed; and (3) reporting any objection from any party, including the *Schmucker* Plaintiffs, in using Special Master Duffin to resolve all pending and future discovery disputes in both the *Schmucker* and *Hostetler* actions. The Court **DIRECTS** the Clerk to file a copy of this order in *Schmucker v. Johnson Controls, Inc.*, 3:14-cv-1593-JD-MGG.

Lastly, the Court acknowledges that on September 12, 2016, the parties filed their Report of Rule 26(f) Planning Meeting in compliance with this Court's order dated August 30, 2016. [DE 191]. Based on the parties' agreement reflected in that Report, the deadline for the close of fact discovery is now **SET** for **June 30, 2017**. Given the remaining dispute as to class certification and bifurcation, the Court will not set any other case management deadlines at this time. The Court **ORDERS** the parties to submit a revised case management plan no later than **May 1, 2017**, which shall contain the following: (1) an recitation of the effects of Plaintiffs'

16

anticipated motion to remand and motion for class certification on discovery; (2) an outline of the parties' remaining discovery needs; and (3) recommendations for case management deadlines going forward.

**SO ORDERED**.

Dated this 25th day of January, 2017.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge